IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | | |
|---|---|---|
| Jessica Bennett, | ) | C/A No. 7:25-cv-03558-TMC-KFM |
| | ) | |
| Plaintiff; | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| vs. | ) | |
| | ) | |
| PennyMac Loan Services, Daniel S. Perotti, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil action filed by the plaintiff, proceeding *pro se*. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in this case and submit findings and recommendations to the district judge.

## PROCEDURAL HISTORY

The plaintiff's complaint was entered on the docket on April 29, 2025 (doc. 1). By order filed May 15, 2025, the plaintiff was given a specific time frame in which to bring this case into proper form for judicial screening (doc. 8). On May 28, 2025, the undersigned filed a Report and Recommendation (hereinafter "the Report") recommending that the instant matter be dismissed (doc. 14). The plaintiff filed several documents in response: objections to the Report (doc. 17); motion for sanctions (doc. 21); letter demanding a ruling on objections (doc. 22); motion for temporary restraining order ("TRO") (doc. 26); and additional objections to the Report (doc. 27). On April 9, 2026, the Honorable Timothy M. Cain, Chief United States District Judge, declined to adopt the Report based on additional matters that were submitted to the court after the issuance of the Report and recommitted the matter to the undersigned for review of the updated documents submitted by the plaintiff

(doc. 29).   Upon review of the materials now before the Court, the undersigned recommends that this matter be dismissed.

## ALLEGATIONS

Of note, the instant matter appears related to a state foreclosure proceeding filed regarding 212 Bennett Dairy Road in Spartanburg, South Carolina (the "Subject Property") by PennyMac Loan Services, LLC, against the plaintiff, the Jarb Revocable Living Trust, and Bella Casa (hereinafter "the Foreclosure Action").[1]  *See* Spartanburg County Public Index,  https://publicindex.sccourts.org/spartanburg/publicindex/  (enter 2025CP4206055) (last visited May 19, 2026).  The Foreclosure Action was stayed based on this action.  *Id*.

The plaintiff alleges federal question jurisdiction based on her claims arising under the Federal Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Truth in Lending Act ("TILA") (doc. 1 at 2).  The plaintiff alleges that she entered a financing agreement with the defendants to purchase a home for $186,056 (*id*. at 2).   The plaintiff alleges that the defendants engaged in deceptive loan collection practices and did not disclose all of the financing terms (*id*.).  The plaintiff also alleges that the defendants failed to accurately report information to the credit bureaus (*id*.).   The plaintiff informed the defendants of the administrative process based on letters sent requesting proof of debt; a revocation of any power of attorney granted to the defendants; sending a refused pre-arbitration demand; and tendering payment to settle the debt that is being refused (*id*. at 2–3).

The plaintiff's first cause of action is violation of the FDCPA because the defendants engaged in unlawful collection practices (*id*. at 3).  The plaintiff's second cause

---

[1] *Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice . . . is in noticing the content of court records.'").

of action is violation of the FCRA because the defendants provided false information to the credit bureaus (*id*.). The third cause of action is violation of TILA because the defendants did not disclose all of the material terms of the plaintiff's mortgage (*id*. at 3–4). For relief, the plaintiff seeks money damages, and to have the mortgage zeroed out for the home in question (*id*. at 4).

In response to the Court's Special Interrogatory that was filed as an attachment to the plaintiff's complaint, the plaintiff noted that she purchased the home in question on January 28, 2021 (doc. 1-2 at 1). The plaintiff then sent debt verification letters to the defendants on December 3, 2024, December 11, 2024, December 26, 2025, and January 8, 2025 (*id*.). The plaintiff sent the defendants a tender of payment to settle the debt on February 24, 2025, which was not accepted (*id*.).

## STANDARD OF REVIEW

As a *pro se* litigant, the plaintiff's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## DISCUSSION

As noted above, the plaintiff filed the instant action seeking money damages from the defendants. Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings. This court possesses the inherent authority to review the *pro se* complaint to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the pleading is not subject to the pre-screening provisions of

28 U.S.C. § 1915.[2]  *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) (finding that "frivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted." (citations omitted)); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (finding that "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee").  Accordingly, "[t]he present Complaint is subject to review pursuant to the inherent authority of this Court to ensure that subject matter jurisdiction exists and that the case is not frivolous."  *Trawick v. Med. Univ. of S.C.*, C/A No. 2:16-cv-730-DCN-MGB, 2016 WL 8650132, at *4 (D.S.C. June 28, 2016), *Report and Recommendation adopted by* 2016 WL 8650131 (D.S.C. July 7, 2016), *aff'd* 671 F. App'x 85 (4th Cir. 2016).

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them."  *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (citing Fed. R. Civ. P. 41(b)).  Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute."  *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).  Since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction.  *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 337 (1895)).  Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its

---

[2] The plaintiff paid the full filing fee; thus, this case is not subject to the pre-screening provisions of 28 U.S.C. § 1915.  Further, the plaintiff is not a prisoner; thus, the case is not subject to the screening provided for in 28 U.S.C. § 1915A.

jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking*, 147 F.3d at 352; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

There are two types of federal jurisdiction: federal question jurisdiction and diversity jurisdiction. Federal question jurisdiction arises when the case arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Diversity jurisdiction, on the other hand, is conferred upon the Court when a suit is between citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). Here, the plaintiff alleges federal question jurisdiction (doc. 1 at 2). However, as set forth in more detail below, based on additional documents submitted to the court by the plaintiff, the instant matter is subject to summary dismissal.

**Motion for a TRO**

As noted above, with her objections, the plaintiff filed a motion for a TRO seeking an order staying proceedings in the Foreclosure Action while this case is pending (doc. 26). A plaintiff seeking a preliminary injunction or TRO must establish all four of the following elements: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds by* 559 U.S. 1089 (2010), *reinstated in relevant part on remand by* 607 F.3d 355 (4th Cir. 2010). A plaintiff must make a clear showing that she is likely to succeed on the merits of her claim. *Winter*, 555 U.S. at 22; *Real Truth*, 575 F.3d at 345–46. Similarly, she must make a clear showing that she is likely to be irreparably harmed absent injunctive relief. *Winter*, 555 U.S. at 20–23; *Real Truth*, 575 F.3d at 347. Only then may the court consider whether the balance of equities tips in the plaintiff's favor. *See Real Truth*, 575 F.3d at 346–47. Finally, the court must pay

5

particular regard to the public consequences of employing the extraordinary relief of injunction. *Real Truth*, 575 F.3d at 347 (quoting *Winter*, 555 U.S. at 24).

Here, as explained in more detail below, the plaintiff's motion for a TRO should be denied as this case should be dismissed. Indeed, the plaintiff cannot assert irreparable harm in this matter because the Foreclosure Action has been stayed pending resolution of the instant matter. *See* Spartanburg County Public Index (enter 2025CP4206055) (last visited May 19, 2026). As such, the plaintiff's motion for a TRO should be denied.

### *Younger* Abstention

Here, because the plaintiff requests that this court zero out the mortgage at question in the Foreclosure Action based on the defendants' collection practices, this court should abstain from hearing this action based upon *Younger* abstention. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court should not interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). *Younger* abstention may apply in noncriminal proceedings when three elements are met:  (1) ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings." *Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 219 (D.S.C. 2019) (citing *Martin Marietta Corp. v. Md. Comm'n on Hum. Rels.*, 28 F.3d 1392, 1398 (4th Cir. 1994)). Here, it is clear that proceedings in the Foreclosure Action remain pending at this time – although the matter was stayed pending resolution of the instant matter. *See* Spartanburg County Public Index (enter 2025CP4206055) (last visited May 19, 2026). Thus, there are state proceedings ongoing at this time – satisfying the first criterion. The plaintiff argues that *Younger* abstention does not apply because she filed this action before the Foreclosure Action. However, the plaintiff provides no basis for her assertion that *Younger* abstention only

6

applies if the state proceedings are filed first.  Indeed, as noted below, foreclosure matters implicate important state interests – and the state interest in such matters does not change because a party files a federal claim seeking to prevent foreclosure.  Further, the only claim the plaintiff has asserted in this case that could affect the Foreclosure Action (because she is not entitled to invalidate the mortgage based on the majority of the claims asserted in this action) is if she had a right to rescission of the loan under TILA (although none of the documents submitted to the Court request such an action).  *See Bradford v. GSBC Mortg. Corp.*, 799 F. Supp. 2d 625, 629–30 (E.D. Va. 2011) (recognizing that a borrower has a right to rescind within three years of closing if the creditor does not make the required TILA disclosures).  However, there is a three-year limit on the right of rescission and the three-year limit is not subject to equitable tolling – meaning that the plaintiff is barred from seeking rescission now because more than three years elapsed after the closing before the plaintiff raised her TILA objections to the defendants.  *See Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 326–27 (4th Cir. 1998) (noting that the three year right of rescission deadline under TILA is a statute of repose (not a statute of limitations), meaning it cannot be tolled).  As such, the plaintiff has provided no basis for how the filing of the instant matter bars the Foreclosure Action; thus, there are ongoing proceedings in state court that satisfy the first *Younger* criterion.

The second criterion is met as the Fourth Circuit has recognized that foreclosure proceedings implicate important state interests.  *See Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 352–53 (4th Cir. 2005) (outlining situations where there are important state interests justifying the application of *Younger*, such as in matters of property law concerns); *Newsom v. Branch Banking & Tr. Co.*, C/A No. 4:18-cv-00112-FL, 2019 WL 348891, at *6 (E.D.N.C. Jan. 9, 2019).  PennyMac is a party in the Foreclosure Action and the Foreclosure Action involves the mortgage that the plaintiff contests is being improperly collected on the Subject Property.  *See* Spartanburg County Public Index (enter

7

2025CP4206055) (last visited May 19, 2026).  As such, the second criterion under *Younger* is also met.

As to the third criterion, the plaintiff has the ability to raise objections to the payment calculations on the mortgage in the Foreclosure Action.  Indeed, as noted, the defendant in this action brought the Foreclosure Action because the plaintiff has not paid her mortgage since 2024.  Accordingly, the plaintiff may argue in the Foreclosure Action that the note/mortgage is unenforceable based on improper collection actions or a failure to properly assign the mortgage.  As such, the plaintiff has failed to allege "extraordinary circumstances" justifying federal interference with the state proceedings.  *See Robinson v. Thomas*, 855 F.3d 278, 286 (4th Cir. 2017) ("A federal court may disregard *Younger's* mandate to abstain from interfering with ongoing state proceedings only where 'extraordinary circumstances' exist that present the possibility of irreparable harm.").  In light of the foregoing, this court should abstain from hearing this action under *Younger*.

**Standing to Bring Claims**

Based on filings presented by the plaintiff after the filing of the Report, it appears that the plaintiff's standing to bring the claims in the instant action should be addressed.  Indeed, although the plaintiff is also a party to the Foreclosure Action, the property in question was conveyed by deed to the Jarb Revocable Living Trust on February 3, 2025, before this action was initiated.  *See* Spartanburg County Register of Deeds (search Jessica Bennett, open Deed Dated February 4, 2025) (last visited May 19, 2026).  The majority of the plaintiff's claims in this action – involving the Subject Property and the pending Foreclosure Action – do not appear to be claims the plaintiff can bring on her own behalf in this action since the owner of the Subject Property is the Jarb Revocable Living Trust.  Additionally, even though the plaintiff may be the trustee for the purported Jarb Revocable Living Trust, she may not represent the trust *pro se* in this action.  *Myers v. Loudon Cnty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005) (although a *pro se* party has a

8

right to represent himself/herself by statute – 28 U.S.C. § 1654 – that right does not "create a coordinate right to litigate for others."); *Corley v. Leach*, C/A No. 2:23-cv-04935-BHH-MHC, 2024 WL 1558609, at *2–3 (D.S.C. Mar. 19, 2024) (collecting cases recognizing that a trustee may not *pro se* represent a trust). As such, the plaintiff may not bring any claims involving the Subject Property – owned by the Jarb Revocable Living Trust – in this action. Nevertheless, the undersigned will also address additional reasons the plaintiff's claims are barred, frivolous, and subject to dismissal.

**Truth in Lending Act Claims**

In addition to abstention and questions regarding standing, the plaintiff's claims in this action are barred for other reasons and this matter should be dismissed. TILA was enacted to "'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to [her] and avoid the uninformed use of credit.'" *Mourning v. Fam. Publ'ns Serv., Inc.*, 411 U.S. 356, 364–65 (1973) (quoting 15 U.S.C. § 1601(a)). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," and imposes criminal penalties and civil liability on creditors who fail to do so. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (internal citation omitted). The plaintiff's complaint appears to seek damages based on TILA because the defendants failed to disclose unspecified finance charges when she purchased the Subject Property in January 2021 (docs. 1 at 3–4; 1-2 at 1). In response to the Report, the plaintiff asserted that any applicable statute of limitations regarding her TILA claim should be tolled based on fraud (doc. 17 at 1–2). However, even based on the additional information provided by the plaintiff, the plaintiff's TILA claim is barred by the applicable statute of limitations because TILA requires that any TILA claim be brought "within one year from the date of the occurrence of the [TILA] violation." 15 U.S.C. § 1640(e). Here, the purported TILA violation at issue – the failure to provide certain disclosures – occurred on the purchase date of January 28, 2021, or at the latest when the

plaintiff received notice of the assignment of the mortgage for servicing to PennyMac in February 2021 (docs. 1-2 at 1; 17-4). The plaintiff has also not alleged how PennyMac acted fraudulently in "hiding" the terms of the note/mortgage to support her argument for equitable tolling – only arguing conclusorily that there was a change in the payment in 2024 and the escrow amounts were improperly calculated in a statement dated August 1, 2024 (docs. 17 at 2; 17-4; 17-11). Indeed, the plaintiff successfully paid on the mortgage after the assignment to PennyMac in 2021 – meaning that she knew well before this action was filed (and before the applicable TILA statute of limitations expired) that the loan had been assigned to PennyMac. Additionally, the case relied on by the plaintiff, *Bailey v. Glover*, involves tolling of claims based on fraud in bankruptcy matters and does not address equitable tolling of TILA claims to support the plaintiff's argument for equitable tolling here. *See Bailey v. Glover*, 88 U.S. 342 (1874). Further, the plaintiff's passing assertion that terms were "hidden" falls well short of showing fraud or meeting the standard recognized for equitable tolling by the Fourth Circuit. *See Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 751–52 (E.D. Va. 2009) (noting equitable tolling based on fraudulent concealment requires showing concealment of facts that are the basis of the claim, a failure by the plaintiff to discover the facts during the statutory period, and the failure to discover was despite the exercise of due diligence (internal citations omitted)), *aff'd* 332 F. App'x 113 (4th Cir. 2009). Thus, because the plaintiff filed her TILA claim on April 29, 2025, more than four years after the closing date, she did not comply with TILA's one-year statute of limitations and she is not entitled to equitable tolling. As such, the plaintiff's TILA claim should be dismissed as untimely.

**Fair Debt Collection Practices Act Claim**

The plaintiff asserts in passing that the defendants violated her rights pursuant to the FDCPA because they did not properly validate the debt upon request and engaged in unspecified unlawful collection practices (*see* doc. 1 at 3). In response to the Report, the

plaintiff indicated that PennyMac is not the original note-holder for the loan, meaning that it does qualify as a debt collector (docs. 17 at 2–3; 17-4).  However, the plaintiff's FDCPA claim is still subject to dismissal based on documentation submitted by the plaintiff indicating that her request for validation of the debt was verified as required by the law.  The Fourth Circuit has held that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999).  Here, it is clear that PennyMac responded to the plaintiff's inquiries on several occasions with information regarding the debt owed, including correspondence dated December 20, 2024 and January 8, 2025 (docs. 17-5 at 3–4; 17-6 at 3–4).  The plaintiff sent additional letters arguing that the defendants did not provide adequate information to validate the debt; however, the documentation provided to this court confirmed in writing the amount owed and where the amounts came from (unpaid mortgage payments beginning in 2024) – in compliance with what is required under the law.  *See Chaudhry*, 174 F.3d at 406.  As such, the plaintiff's FDCPA claim may not proceed in this action and should be dismissed.

**Fair Credit Reporting Act Claim**

The plaintiff also seeks damages from the defendants based upon alleged false information reported on her credit report (doc. 1 at 3).  The FCRA governs consumer credit reporting practices.  15 U.S.C. § 1601, *et seq.*.  The FCRA delineates requirements for three types of actors, including "(1) consumer reporting agencies, (2) users of consumer reports, and (3) the furnishers of information to consumer reporting agencies."  *See Martin v. Sallie Mae, Inc., et al.,* C/A No. 5:07-cv-00123, 2007 WL 4305607, at *9 (S.D. W. Va. Dec. 7, 2007) (citing *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 11 (D. Mass. 2004)).  These requirements are either enforced by appropriate government officials or private entities.  *See* 15 U.S.C. § 1681s-2.  For example, § 1681s-2(a), which requires that furnishers of

11

credit information provide consumer reporting agencies with accurate information, may only be enforced by *government* officials. *See* 15 U.S.C. § 1681s-2(d) (emphasis added). The plaintiff's claim in this action is that the defendants furnished false information to the credit bureaus; thus, her claim falls within this category (*see* doc. 1 at 3). However, because only the government can enforce FCRA claims under 15 U.S.C. § 1681s-2(d), the plaintiff's FCRA claim is also subject to dismissal. *See* 15 U.S.C. § 1681s-2(d).

In additional filings with the court, the plaintiff contends that her FCRA claim should instead be considered based on 15 U.S.C. §§ 1681n or 1681o (*see* doc. 17 at 3–4). However, those two statutes involve penalties for violations of the FCRA, *not* a legal basis for the plaintiff's alleged FCRA claims in this matter. *See* 15 U.S.C. §§ 1681n, 1681o; *Doe v. Nationwide Testing Ass'n, Inc.*, C/A No. 3:25-cv-010-HEH, – F. Supp. 3d ----, 2026 WL 540387, at *3 (E.D. Va. 2026) (recognizing that damages requests under the FCRA are based on 15 U.S.C. §§ 1681n, 1681o). The plaintiff also argues that her FCRA claim is based on the refusal by PennyMac to accept a tender of payment despite the account being reported as delinquent (doc. 17 at 3–4). This argument does not provide an additional statutory basis for the plaintiff's FCRA claim. Indeed, even presuming the claim could arise under § 1681s-2(b), the duties under that section only apply after notice to the furnisher from a *credit reporting agency* – not after notice by the consumer of alleged incorrect information. *See* 15 U.S.C. § 1681s-2(b). Further, the purported payment proffered by the plaintiff was through sending a letter "utilizing the Principal's interest in accordance with applicable financial laws and the terms governing Principal's account," *not* by payment of actual money, valid credit, or a true negotiable instrument. PennyMac was not required to accept the plaintiff's purported payment just because she references interest on a Principal's account – which was clearly communicated to the plaintiff (doc. 17-8 at 3–4); thus any FCRA violation based on the purported proffered payment is frivolous in nature and subject to dismissal.

**Frivolousness**

In addition to the foregoing, the plaintiff's complaint is also subject to dismissal under the inherent authority of the court as frivolous. *See Feurtado v. McNair*, C/A No. 3:05-cv-1933-SB, 2006 WL 1663792, at *2 (D.S.C. Jun. 15, 2006) (noting that frivolousness encompasses inarguable legal conclusions and fanciful factual allegations), *aff'd*, 227 F. App'x 303 (4th Cir. 2007), *petition for cert. dismissed*, 553 U.S. 1029 (2008). Indeed, the claims brought by the plaintiff in this action, that the defendants violated her rights by failing to accept her proper tender and respond to the requests by the plaintiff, "Jessica: Bennett-Sanders EL, acting with power of attorney over Jessica Bennett" (doc. 1 at 2), are frivolous and appear based on tax protester/sovereign citizen language. In response to the Report, the plaintiff contends that she has valid religious beliefs and brought this case in "propria persona sui juris" (doc. 17 at 4–5). However, the plaintiff's complaint and other documents bear all the hallmarks of sovereign citizen theory – appearing to assert a "special status" to avoid her financial obligations (*see* docs. 1; 1-1 (noting the complaint was filed by "Jessica: Bennett-Sanders El, authorized agent under Power of Attorney for JESSICA BENNETT); 17; 17-1; 17-5 at 1–2; 17-6 at 1–2 (signed by Jessica Bennett "herein Principal, a living, breathing woman"; "Principal is the secured party, superior claimant, holder in due course, and principal creditor having a registered priority lien hold interest to all property held in the name of the Debtor, JESSICA BENNETT evidenced by UCC-1 Financing Statement filed with the U.C.C. division for South Carolina Secretary of State"); 17-7 at 1–3 (noting that use of notary "does not constitute any adhesion, nor does it alter my status in any manner. The purpose for notarization is verification and identification only and not for entrance into any foreign jurisdiction"); 17-8 at 1–2 (letter purporting to act as legal tender to pay the debt in full based on "utilizing the Principal's interest in accordance with applicable financial laws and the terms governing Principal's account")). Adherents to the "sovereign citizen" theory "believe that the state and federal governments lack constitutional legitimacy and therefore

13

have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013); *see also Presley v. Prodan*, C/A No. 3:12-3511-CMC-JDA, 2013 WL 1342465, at *2 (D.S.C. Mar. 11, 2013) (collecting cases describing the "sovereign citizen" movement and its common features), *Report and Recommendation adopted by* 2013 WL 1342539 (D.S.C. Apr. 2, 2013).  These theories have repeatedly been rejected as baseless. *See, e.g.*, *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status . . . as a 'sovereign citizen' . . . that person is not beyond the jurisdiction of the courts.  These theories should be rejected summarily, however they are presented."); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (explaining claim by party that he was "outside" the jurisdiction of the United States to be "completely without merit" and "patently frivolous" and rejecting it "without expending any more of this Court's resources on their discussion").  Indeed, as outlined above, the plaintiff's claims in this action are premised – at least in part – on redemptionist and sovereign citizen theories, which have been identified as utterly frivolous and patently ludicrous claims that waste the time of the litigants and the court.  *Barber v. Countrywide Home Loans, Inc.*, C/A No. 2:09-cv-40, 2010 WL 398915, at *4 (W.D.N.C. Oct. 7, 2009).  As such, despite the plaintiff's assertions to the contrary, her filings indicate that she ascribes to redemptionist or sovereign citizen theories and her claims are subject to dismissal as frivolous.

## RECOMMENDATION

The undersigned is of the opinion that the plaintiff cannot cure the defects identified above by amending her complaint.  Therefore, the undersigned recommends that the district judge dismiss this action *with* prejudice, without leave to amend, and without issuance and service of process.  *See Britt v. DeJoy*, 45 F.4th 790, 791 (4th Cir. 2022) (published) (noting that "when a district court dismisses a complaint or all claims without providing leave to amend . . . the order dismissing the complaint is final and appealable").  It is further recommended that the motion for a TRO (doc. 26) be denied.  It is further

14

recommended that the United States District Judge assigned to this case warn the plaintiff regarding the entry of sanctions in the future should the plaintiff continue to file frivolous litigation in this court.  **The attention of the parties is directed to the important notice on the next page.**

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

May 19, 2026
Greenville, South Carolina

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Room 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).